**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| _____ | : | |
| MATSUSHITA ELECTRIC INDUSTRIAL CO., LTD., | : | |
| Plaintiff, | : | Civ. No. 02-336 (GEB) |
| v. | : | |
|  |  | **MEMORANDUM OPINION** |
| SAMSUNG ELECTRONICS CO., LTD., *et al.*, | : | |
| Defendants. | : | |
| _____ | : | |
| SAMSUNG ELECTRONICS CO., LTD., *et al.*, | : | |
| Counterclaimants, | : | |
| v. | : | |
|  | : | |
| MATSUSHITA ELECTRIC INDUSTRIAL CO., LTD., | : | |
| Counterclaim Defendant. | : | |
| _____ | : | |

**BROWN, Chief Judge**

This matter comes before the Court upon the patent infringement action between Plaintiff Matsushita Electric Industrial ("MEI") and Samsung Electronics Co., Ltd. and its affiliates (collectively referred to as "Samsung"). A trial was held from July 31, 2006 to August 22, 2006. A jury determined issues of infringement, invalidity, and willfulness.[1] Samsung's inequitable conduct claims, however, were tried to the Court. On August 22, 2006, Samsung submitted a bench memorandum addressing its inequitable conduct claims. On August 23, 2006, MEI filed a motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 52 in support of a finding of no inequitable conduct. The following constitutes this Court's findings of fact and

---

[1] On August 25, 2006, the jury found that the '998 and '095 Patents were invalid and not infringed by Samsung's accused products.

conclusions of law concerning Samsung's claims that the '998 and '095 Patents are unenforceable due to inequitable conduct.

## I.   FINDINGS OF FACT

### A.   The '998 Patent

The patent application for U.S. Patent No. 5,053,998 ("the '998 Patent") was filed in the Patent and Trademark Office ("PTO") on March 15, 1990.  The application for the Japanese counterpart to the '998 Patent was filed on March 15, 1989.  The named inventors of the patent are Yasushi Kannan, Takashi Taniguchi, Michiharu Shikata ("Shikata"), and Tatsumi Sumi.  MEI is the assignee and owner of all rights, title and interest for the '998 Patent.  The named inventors twice acknowledged their duty to disclose information to the PTO – once on April 19, 1990 and again on June 25, 1991.  The PTO granted the '998 Patent on October 1, 1991.

One of the named inventors, Shikata, filed another patent application in the Japanese Patent Office ("JPO") which was published on August 17, 1987.  On February 13, 1986, Shikata filed  JP Application Sho 62-188092 for Semiconductor Memory Device ("the Shikata Reference").  This prior art reference was before the JPO during the prosecution of the Japanese counterpart to the '998 Patent.  In August 1998, the JPO rejected claims of the Japanese counterpart based on the Shikata Reference.  After considering the arguments of the inventors, the JPO ultimately allowed the claims, finding the Shikata reference not relevant and not material.

During prosecution of the U.S. patent application, the Examiner rejected the claims on § 103 grounds in light of U.S. Patent No. 4,916,671 ("the Ichiguchi Patent").  The inventors filed an Amendment on January 14, 1991 and distinguished Ichiguchi over the invention by noting that

Ichiguchi disclosed a sense amplifier driver "connected to only one end of the restore and drive signal lines," (Trial Ex. PLTF 11 at MEI0301105), unlike the '095 Patent.  No prior art was cited before the Examiner which disclosed the use of multiple drivers.  The inventors successfully overcame the rejection and the patent was issued on October 1, 1991.

> **B.**      **The '095 Patent**

The patent application which led to U.S. Patent No. 5,375,095 ("the '095 Patent") was filed in the PTO on June 12, 1991.  The named inventors of the patent are Toshio Yamada, Michihiro Inoue and Junko Hasegawa.  MEI is the assignee and owner of all rights, title and interest for the '095 Patent.  The named inventors acknowledged their duty to disclose information to the PTO by filing a declaration on June 6, 1991.

On December 2, 1992, the Examiner rejected all proposed claims on § 102 and § 112 grounds based on certain prior art figures included in the application, as well as a reference the Examiner independently located. The inventors filed an Amendment and argued that the prior art was distinguishable from these references because they failed to disclose "a plurality of sense amplifier drive circuits distributed among the unit sense amplifiers blocks at regular spacing as is required by Claim 1 of the '095 patent." (Samsung Bench Mem. at 5).

On October 4, 1993, the Examiner again rejected the proposed claims on § 103 grounds in light of the Kohno and Tobita Patents. The Examiner also identified U.S. Patent No. 5,040,144 (the "Pelley Patent") as a relevant prior art reference.  In a Request for Reconsideration filed on April 4, 1994, the inventors argued that the Pelley Patent only disclosed a single-voltage mesh, and not a dual mesh, which was required by the proposed invention.  The claims were allowed on December 20, 1994 based on the Examiner's conclusion that "[t]he semiconductor memory device, having a

3

plurality of sense amplifier drive circuits which each are coupled to first and second voltage supply meshes extending throughout the memorary array region, as recited in Claim 1 is considered to be novel." (Trial Ex. DX-083).

An article was published by a Samsung employee named Daeje Chin, *et al*. in May 1989. The article was entitled "An Experimental 16Mb DRAM with Reduced Peak Current Noise" ("the Chin Article"). The Chin Article discusses the use of distributed sense amplifier drivers. The Chin Article was cited by Inoue numerous times in other articles around the time of the prosecution for the '095 Patent. However, Inoue did not disclose the Chin Article to the Examiner during the '095 Prosecution.

## II.      CONCLUSIONS OF LAW

### A.      Inequitable Conduct

Samsung claims that the '998 Patent and the '095 Patent are unenforceable due to inequitable conduct allegedly committed by two inventors of these patents, Shikata and Inoue, respectively. Samsung contends both inventors failed to disclose material prior art references to the PTO during prosecution. Samsung further contends that both inventors acted with an intent to deceive.

Patent applicants have a duty to prosecute patents with candor, good faith and honesty. *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed. Cir. 1995). This duty may be breached by "affirmative misrepresentations of a material fact, failure to disclose material information, or submission of false information, coupled with an intent to deceive." *Id.* "One who alleges inequitable conduct arising from a failure to disclose prior art must offer clear and convincing proof of the materiality of the prior art, knowledge chargeable to the applicant of that prior art and of its

4

materiality, and the applicant's failure to disclose the prior art, coupled with an intent to mislead the PTO." *Id.* An accused infringer "seeking to have a patent declared unenforceable has a heavy burden to meet." *Hoffmann-La Roche v. Promega Corp.*, 323 F.3d 1354, 1359 (Fed. Cir. 2003).

In performing the first step of its inequitable conduct analysis, this Court must determine whether Samsung proffered clear and convincing evidence to establish a threshold level of materiality and intent to deceive. To determine whether a reference is material, courts refer to the materiality standard set forth in PTO Rule 52. *Purdue Pharma L.P. v. Endo Pharms. Inc.*, 438 F.3d 1123 (Fed. Cir. 2006). Information is deemed material if:

> It is not cumulative to information already of record or being made of record in the application, and
>
> (1)    It establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim; or
>
> (2)    It refutes, or is inconsistent with, a position the applicant takes in:
>
>> (I)    Opposing an argument of unpatentability relied on by the Office, or
>>
>> (ii)    Asserting an argument of patentability.

37 C.F.R. § 1.56(b)(2004).[2] "[M]ateriality does not presume intent, which is a separate and essential component of inequitable conduct." *Braun, Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815, 822 (Fed.

---

[2] This standard reflects the version of Rule 52 which came into effect since 1992. The Federal Circuit has noted, however, that this rule was not intended to differ significantly with the pre-1992 standard. *Purdue*, 438 F.3d at 1129. Rather, the current version was intended to clarify the pre-1992 materiality standard which looked to whether "there is a substantial likelihood that a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent." USPTO Rule 56, 37 C.F.R. § 1.56 (1977); *see also Hoffmann-La Roche*, 323 F.3d at 1368 n.2.

Cir. 1992).

"Even if an omission is found to be material, the omission must also be found to have been made with the intent to deceive." *Ferring,* 437 F.3d at 1191.  In an inequitable conduct claim, the Federal Circuit has made clear that intent to deceive cannot be "inferred solely from the fact that information was not disclosed; there must be a factual basis for a finding of deceptive intent." *Purdue*, 438 F.3d at 1134 (quoting *Hebert v. Lisle Corp.*, 99 F.3d 1109, 1116 (Fed. Cir. 1996)).  To satisfy this requirement, "the involved conduct, viewed in light of all the evidence, including evidence of good faith, must indicate sufficient culpability to require a finding of intent to deceive." *M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co., Inc.,* 439 F.3d 1335 (Fed. Cir. 2006) (quoting *Paragon Podiatry Lab. v. KLM Lab*., 984 F.2d 1182, 1189 (Fed. Cir. 1993)).

After the requisite levels of intent and materiality are shown, "the district court must determine whether the equities warrant a conclusion that the patentee has engaged in inequitable conduct." *Id.*  (citing  *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed. Cir. 1995)).

### B.    The '998 Patent

Samsung asserts that the '998 Patent must be rendered unenforceable because Shikata, one of the inventors of the '998 Patent, failed to disclose material information during prosecution.  In particular, Samsung asserts that Shikata committed inequitable conduct by failing to disclose the Shikata Reference.  Additionally, Samsung asserts that deceptive intent can be inferred from the surrounding circumstances.  The Court will begin its analysis by addressing the parties' arguments concerning deceptive intent.

In support of its assertion that Shikata acted with an intent to deceive, Samsung argues that the Court should infer intent because Shikata had knowledge of the reference, since it was his own

work, yet fails to provide a good faith explanation for not disclosing the Shikata reference. The Court disagrees that an inference of intent can be drawn from these circumstances. Shikata's knowledge of the reference is insufficient to establish the degree of culpability required for a finding of deceptive intent. Additionally, the Court disagrees with Samsung that there was no evidence supporting a good faith explanation for the nondisclosure of the Shikata reference.

At trial, Shikata was questioned as to why he did not provide the Examiner with the Shikata reference:

> Q:    Mr. Shikata, did you disclose the '092 Publication when you filed for the '998 Patent?
>
> A.    No, I did not.
>
> Q:    Okay, why not?
>
> A:    Well, the contents of the '092 [Publication], that has to do with an NMOS DRAM, whereas the '998 [Patent] has to do with CMOS technology. And the fact is, NMOS and CMOS, . . . these technologies are basically different. They differ quite substantially.

(Trial Tr. Aug. 17, 2006 9:08 a.m. at 16:5-12). Shikata further explained that the '998 Patent is also directed toward solving a problem that exists when sense amplifier operations are used in CMOS DRAM, namely peak instantaneous current. Shikata testified that this problem did not apply to NMOS DRAMs. (*Id.* at 16:13-23). Shikata stated that, to date, he still believes that disclosure of the Shikata reference is not necessary nor relevant to the prosecution of the '998 Patent because of the differences in subject matter between the two references:

> Q:    And as you sit here today, do you believe that you should have disclosed the '092 reference when filing for the '998 [P]atent?
>
> A:    Even now, no, I don't think so. . . . [A]s I just testified, the

7

> '092 is a patent that has to do with NMOS.  The '998 has to
> do with CMOS.  And there are many differences between
> NMOS and CMOS.  In fact, they have basic differences.  The
> fact is, even [if] you were to take the '092 [Reference] and try
> to use it in CMOS, you couldn't apply it as is.  The fact is, if
> you make a CMOS DRAM, and you have your sense amp
> operations, you'll have a problem with peak instantaneous
> current.

(*Id.* at 18:12-22).

In further support of this assertion, MEI's expert Taylor testified at length about the differences that exist between NMOS and CMOS technology.  (Trial Tr. Aug. 17, 2006 8:26 a.m. at 25-31).  Taylor stated that the older NMOS technologies did not have the restore signal lines that are disclosed in the '998 Patent.  (*Id.* at 25:22-25).  Furthermore, Taylor described NMOS technology as a relatively simple technology with few processing and manufacturing steps, which resulted in lower cost technology.  (*Id.* at 27:2-11).  In contrast, CMOS technology, according to Taylor, is a more complex technology involving more processing steps.  Taylor testified that "[a]ll of the circuit design in a CMOS design compared to an NMOS design was absolutely radically different." (*Id.* at 27:15-17).  These important differences involved differences between the entire circuitry, decoding and sensing.  (*Id.* at 27:24-28:3).

Samsung's expert McAlexander also recognized that differences exist between NMOS and CMOS technologies.  When asked whether there are differences between the two technologies, McAlexander replied:

> In a general sense that's true, you have a different set of
> considerations and designs when you're dealing with different
> architectures and designs even within one of those technologies.

(Trial Tr. Aug. 11, 2006 1:44 p.m. at 37:17-20).  McAlexander further acknowledged that the technology disclosed in the '998 Patent is CMOS technology.  (*Id.* at 38:1).

8

In light of the evidence of record, the Court finds ample evidence supporting a good-faith explanation for the nondisclosure, and insufficient evidence to establish that Shikata deliberately withheld the Shikata reference. The Court credits the testimony of Shikata and Taylor explaining that the Shikata reference concerned NMOS technology which was significantly different from the technology disclosed in the '998 Patent. The Court further credits Shikata's testimony that the '998 Patent was also directed toward resolving a problem that does not exist in NMOS DRAMs, namely the problem with peak instantaneous current. Although Samsung takes issue with the fact that Shikata was not able to proffer his good faith explanation during his deposition in June 2005, (Samsung Bench Mem. at 13), the Court finds no basis to discredit the testimony of Shikata who appeared before the Court as a completely credible witness.

Thus, the record supports a finding that Shikata had a good faith explanation for choosing not to disclose the Shikata reference to the Examiner during prosecution, and thus refutes any inference of intent. *See M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co., Inc.*, 439 F.3d 1335, 1341 (Fed. Cir. 2006) ("a good faith explanation can be presented as evidence to refute an inference of intent"). In essence, Samsung's position is solely premised on the nondisclosure of the Shikata Reference. The Court concludes that this fails to constitute clear and convincing evidence that Shikata intended to deceive the PTO.

Samsung also relies on certain arguments that were made by the inventors during prosecution to establish intent. (Samsung Bench Mem. at 11-12). In particular, Samsung refers to the argument made by the inventors in an effort to overcome the rejection over the Ichiguchi reference. Samsung asserts that the inventors distinguished the invention from the '998 Patent by arguing that the Ichiguchi reference failed to disclose the use of plural sense amplifier drivers – a claimed inventive

feature of the patent.  At trial, Samsung's expert McAlexander testified that the Shikata Reference refutes the inventor's argument on patentability because it discloses plural drivers.  (Trial Tr. Aug. 14, 2006 at 9:12 a.m. at 40:3-6).  McAlexander emphasized that the Examiner did not have before him any prior art disclosing plural sense amplifier drivers, such as the Shikata Reference.  (*Id.* at 40:19-41:10).

In response, MEI argues that Samsung mischaracterizes the arguments made to  distinguish the '998 Patent invention over the Ichiguchi Patent.  MEI asserts that the inventors distinguished Ichiguchi by arguing that:

> in Ichiguchi, a sense amplifier driver which is composed of transistors . . . is connected to *only one end of the restore and drive signal lines* . . . .  Therefore, from this point of view, Ichiguchi merely teaches the prior art arrangement already discussed in the present specification.

(Trial Ex. PLTF 11 at MEI0301105) (emphasis added).  MEI notes that the evidence at trial established that the Shikata Reference does not include a restore signal line.  (Trial Tr. Aug. 17, 2006 8:26 a.m. at 25-26).  Thus, MEI contends that the inventors could have nonetheless distinguished Ichiguchi, even if the Shikata Reference were disclosed, since the Ichiguchi reference, as well as the Shikata Reference, fail to disclose drivers at opposite ends of the restore and drive signal lines.

Although Samsung advances its argument in an effort to prove intent, the Court finds this argument relevant to the issue of materiality of the reference, since it addresses the inventors' positions on patentability taken during prosecution.  *See* 37 C.F.R. § 1.56(b)(2).  Based on the record, the Court concludes that Samsung fails to establish that the Shikata Reference meets the threshold showing of materiality.  First, as discussed above, the Court finds that the Shikata Reference concerns NMOS technology, and thus has limited application and relevance to the '998 Patent.  Second, the Court further finds that the weight of the evidence fails to establish that the

inventors would have been precluded from distinguishing the '998 Patent invention from the Ichiguchi reference if the Shikata Reference was before the Examiner. The basis of distinction was not limited to the presence of plural sense amplifier drivers, but plural sense amplifier drivers located at opposite ends of the restore and drive signal lines.

In sum, Samsung fails to prove both materiality and intent to deceive. Consequently, the Court concludes that Samsung fails to prove by clear and convincing evidence that Shikata's nondisclosure of the Shikata Reference amounted to inequitable conduct which renders the '998 Patent unenforceable. Accordingly, the Court grants MEI's motion with respect to the '998 Patent.

### C.    The '095 Patent

#### 1.    Materiality

Samsung asserts that Inoue committed inequitable conduct by failing to disclose the Chin Article to the PTO during prosecution. According to Samsung, the Chin Article is a highly material reference because it discloses one of the inventive features of the '095 Patent – the use of distributed sense amplifiers drivers. At trial, Samsung's expert McAlexander testified that a person of ordinary skill in the art would be motivated to combine the Pelley Patent, a reference that was before the Examiner, with the undisclosed Chin Article. McAlexander explained that the Chin Article teaches the use of distributed sense amplifier drivers, and that the Pelley Patent "teaches the use of voltage meshes for the purposes of providing power in a distributed fashion." (Trial Tr. Aug. 11, 2006 9:16 a.m. at 52:1-15). Taken together, McAlexander opined that Claim 1 of the '095 Patent would be rendered obvious to a person of ordinary skill in the art.

In response, MEI advances two arguments in support of its assertion that Samsung has failed to prove the materiality of the Chin Article. (MEI Br. at 13-14). First, MEI argues that the Chin

Article is not material because it was cited numerous times by Inoue in his articles to simply provide background information on relevant technology. Second, MEI asserts that Inoue believed his invention was distinguishable from the Chin Article because it discloses a one-to-one arrangement of sense amplifier drivers to sense amplifiers, and does not disclose a mesh power supply.

MEI's arguments fail to rebut McAlexander's testimony regarding the effect of the combination of the Chin Article and the Pelley Patent on patentability. Rather, the arguments focus on Inoue's subjective belief which, although relevant in an intent analysis, is not relevant in a materiality analysis. In light of the all of the evidence, the Court concludes that the Chin Article is a highly material reference which was not before the Examiner during the prosecution of the '095 Patent. Consequently, Samsung adduced sufficient proof to meet the threshold requirement of materiality for its inequitable conduct claim.

### 2.    Intent

With regard to intent, Samsung relies on the Federal Circuit's holding in *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.,* 120 F.3d 1253 (Fed. Cir. 1997). In *Critikon*, the court articulated that "[n]o single factor or combination of factors can be said always to require an inference of intent to mislead; yet a patentee facing a high level of materiality and clear proof that it knew or should have known of that materiality, can expect to find it difficult to establish 'subjective good faith' sufficient to prevent the drawing of an inference of intent to mislead." Samsung contends that the surrounding circumstances prevent Inoue from establishing good faith to preclude the drawing of an inference of intent. In particular, Samsung relies on the following facts: 1) that Inoue knew of the Chin Article during while prosecuting the patent; 2) that Inoue did not disclose it; 3) that Inoue has not proffered a good faith explanation for nondisclosure; and 4) that

the explanations Inoue does provide are not credible explanations.  (Samsung Bench Mem. at 16).

In response, MEI argues that Samsung's position must fail in light of the Federal Circuit's holding in *M. Eagles Tool Warehouse, Inc., v. Fisher Tooling Co., Inc.*, 439 F.3d 1335 (Fed. Cir. 2006).  In that case, the patentee similarly failed to disclose a material reference.  The defendants argued that the patentee should have known of the reference's materiality which had been in existence for over twenty years.  The defendants further argued that the patentee's failure to provide a good faith explanation for the nondisclosure was sufficient evidence to draw an inference of deceptive intent.  The Federal Circuit disagreed.  The court held that "a failure to disclose a prior art device to the PTO, where the only evidence of intent is a lack of a good faith explanation for the nondisclosure, cannot constitute clear and convincing evidence sufficient to support a determination of culpable intent."  *Id.* at 1341.  The court further explained:

> Intent is generally inferred from the facts and circumstances surrounding the applicant's overall conduct, especially where there is no good faith explanation for a nondisclosure. There still must be a factual basis, however, for a finding of intent.

*Id.* (citations omitted).

In light of all of the evidence, the Court finds that the surrounding facts and circumstances surrounding Inoue's conduct do not amount to clear and convincing evidence of an intent to deceive. The facts in this case are unlike the facts in *Critikon*.  The patentee in Critikon failed to disclose a prior art patent which clearly included one of the inventive features of the patent.  The court noted evidence in the record from which a high degree of intent could be inferred.  This included: 1) the fact that neither Critikon nor its patent counsel informed the PTO of the ongoing litigation while reissue proceedings for the patent-in-suit were underway; 2) Critikon's patent counsel reviewed the prior art patent in detail; 3) one patent counsel opined that all of the claims in the prior art patent,

13

*except* for the claims which included the key element claimed in Critikon's patent, were invalid; 3) Critikon's patent counsel made handwritten notations on the prior art patent to this effect and passed these notes on to Critikon's second patent counsel; 4) Critikon's patent counsel cited the prior art reference in other patent proceedings; and 5) Critikon's patent counsel were "repeatedly confronted with the [prior art] patent and its significance over the course of the litigation, which substantially overlapped the . . . reissue proceedings. *Critikon*, 120 F.3d at 1256 (emphasis added).  The court found these facts sufficient to support an inference of intent.

Similar facts, however, do not exist in this case.  Samsung cites no evidence that either Inoue or his patent counsel evaluated the Chin Article to determine its effect on the validity of the '095 Patent.  There is no indication that the materiality of the Chin Article was evaluated at one point, and Inoue made a deliberate decision not to disclose it to the PTO.  At most, the record shows that Inoue cited that Chin Article several times during the time of the prosecution of the '095 Patent.  However, Inoue testified at trial that the Chin reference was cited to provide background information on "operating speed delays in a DRAM."  (Trial Tr. Aug. 2, 2006 a.m. at 49:9-12).  The Court finds no basis to discredit this testimony.

As such, the circumstances in the present case more closely reflect the facts in *M. Eagles* – i.e., the only evidence in the record of deceptive intent is the lack of Inoue's good faith explanation for the nondisclosure of the Chin Article.  As the Federal Circuit held in *M. Eagles*, this cannot support an inference of intent.  The other facts upon which Samsung relies, namely Inoue's knowledge of the article, his failure to disclose it, and varied explanations as to why he did not disclose the article, do not amount to clear and convincing evidence of an intent to deceive.

Lastly, Samsung also argues that the Court should find inequitable conduct because the

inventors of the '095 Patent made misleading statements to the PTO with regard to the Pelley Patent. In particular, Samsung asserts that MEI misled the Examiner by stating that the Pelley Patent discloses only one voltage mesh, when in fact it "teaches that the $V_{ss}$ mesh in its preferred embodiment could be used for another power supply, such as $V_{dd}$." (Samsung Bench Mem. at 17-18). In response, MEI argues that a plain reading of the Pelley Patent teaches the use of a second grid in the alternative, rather than in combination with, the first grid which is consistent with the inventors' statements. At trial, MEI's expert Taylor testified that the Pelley Patent "discloses a single grid of $V_{dd}$ or $V_{ss}$," and that it did not disclose a mesh. (Trial Tr. Aug. 17, 2006 at 8:26 a.m. at 57:14-15). Taylor further stated: "It shows a mesh of only one of them." (*Id.* at 57:16-17).

Samsung's argument fails for two reasons. First, in light of Taylor's testimony, the record does not clearly establish that MEI made a misleading statement to the PTO. Rather, it establishes that the Pelley Patent discloses the use of one grid as an alternative to another. Second, even if Samsung has proven that MEI made a false or misleading statement to the PTO, Samsung would nonetheless be required to prove by clear and convincing evidence the separate element of intent. *See Flex-Rest, LLC v. Steelcase, Inc.*, 455 F.3d 1351, 1362 (Fed. Cir. 2006) (noting that "[f]ailing to disclose material information, or submitting false material information or statements, *coupled with* an intent to mislead or deceive the Patent Office, constitutes inequitable conduct") (emphasis added). As discussed above, Samsung fails to do so. Consequently, the Court finds that Samsung fails to meet its heavy burden of establishing that the '095 Patent is unenforceable due to inequitable conduct.

**III.    CONCLUSION**

For the reasons stated above, the Court finds that Samsung fails to meet its burden of proof with regard to its inequitable conduct claim.  Accordingly, the Court does not find the '998 and '095 Patents unenforceable due to inequitable conduct.  The Court grants MEI's motion for judgment as a matter of law pursuant to Rule 52.  An appropriate form of Order accompanies this Memorandum Opinion.

Dated:        September 21, 2006

                                                    s/ Garrett E. Brown, Jr.
                                                  GARRETT E. BROWN, JR., U.S.D.J.

16